47 So.2d 657

**BOWMAN v. STATE.**

7 Div. 101.

Court of Appeals of Alabama.

June 20, 1950.

Rehearing Denied Aug. 8, 1950.

422

L. L. Crawford and Scott, Dawson & Stockton, of Fort Payne, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

CARR, Judge.

In 1925 Louie Bowman was indicted for murder in the first degree. He killed Milton King by striking him with a rock. Death followed two or three days after the wound was inflicted.

The accused was not arrested until 1948. The trial below followed in due time and the defendant was convicted of manslaughter in the first degree. A sentence of five years in the State penitentiary was imposed.

In support of its contention that the homicide was without legal right or justification, the State relied primarily on the testimony of a son of the deceased man. This witness testified that the appellant was a tenant on the farm of the decedent.

On the afternoon of the homicide Mr. Milton King drove up to the premises of his home on a wagon. While Mr. King was in the act of watering his mules at a well, the appellant approached and this occurred: "When Mr. Bowman came up he asked my daddy why he did not sign this note for the car and my daddy told him he could not afford to and said he didn't own a

car and he had not made enough he was afraid to pay for one and he says, 'I am going to make you wish to hell you had signed this note.' My daddy was still on the wagon at that time and started to get off the wagon. He had dropped his lines down and started to pick them up and Bowman hit him in top of the head with a rock. That was the only words said between them and the only lick hit during the time."

The defendant's account of the affray was: "That Saturday afternoon I went up to Mr. King's and asked him about some groceries and the mule to finish my crop. He says, 'You don't get any more. You have done taken up all you are going to get.' I says, 'Mr. King, I am going to finish my crop.' He says, 'I tell you you are not getting any more here, you son-of-a-bitch, you move if you cannot get anything else.' I says, 'I have to have a mule and some groceries to finish.' He jumped off the wagon and says, 'You son-of-a-bitch, I will whip you,' and hollered for his gun practically at the same time. I don't know how many slashes he gave me but in the scramble while he was slashing me I was knocked down or fell down to the best of my knowledge on the ground. I got up, raised up about half straight, what you would call half straight up off the ground a little above higher than my knees, still bending over, I picked up a rock and held it in my right hand. I am right handed. I throwed it at Mr. King and the minute I throwed it I ran because Mrs. King was coming up with the shotgun."

The son of the deceased .was asked, "When he (deceased) drove up, just tell the jury what happened." Without objections the witness proceeded with the answer. At a point in the narration he started to state what he (witness) told his father.

Objections were then interposed by counsel for appellant and overruled by the court. The witness continued: "Mr. Bowman was coming out that way and I told my daddy I was afraid he was wanting trouble and he wanted to know why and by that time both had gone to talking. Mr. Bowman had bought a car and—"

At this point objections were again interposed and this time were sustained, and the court admonished the witness to state "just what happened there." The witness then proceeded to give the account which we have copied hereinabove.

It appears that when the son stated to his father, "I was afraid he was wanting trouble," the appellant was present or so close that he immediately entered into a conversation with the deceased.

On account of our inability to determine from the record the position of the appellant at the time the indicated remark was made, we are unable to hold that the rule of res gestae applies. However, we are clearly convinced that the matter did not affect the substantial rights of the accused and that Supreme Court Rule 45, Code 1940, Tit. 7 Appendix, has a purposeful application.

Later during his examination, the son was permitted to state what he saw the physicians do while they were treating the wound on the deceased. He was also allowed to answer that in his opinion his father never regained full consciousness after the blow was struck. All of this related to matters that were not in dispute. Without question death was caused by the inflicted injury to the head. Stallings v. State, 249 Ala. 1, 32 So.2d 233; Broadway v. State, ante, p. 86, 45 So.2d 480.

Complaint is made that a witness was permitted to state what the appellant said to him prior to the difficulty. The objection to the question came after the answer thereto. Smith v. State, 16 Ala.App. 546, 79 So. 802; Jones v. Daniel, 34 Ala. App. 490, 41 So.2d 627.

Another witness was interrogated with reference to a conversation he had with the defendant on the same afternoon but prior to the homicide. Over objections the witness answered: "Yes, he said he was going up there to get Mr. King to give him his ten dollars back or come to Fort Payne and tell the people he bought the car from that he didn't owe him or that his crop would take all to pay him."

The statement as it appears in the record is somewhat involved and confusing. There is an indication, however, that the appellant expressed a feeling of unfriendliness and ill will toward the deceased.

The theory of the State was that the accused became incensed with Mr. King, because the latter would not secure payments on an automobile, which the former had agreed and desired to purchase, and this formed the motive for the difficulty in which Mr. King was killed.

The appellant denied that the automobile transaction entered into the matter in any way. On this question the evidence presents irreconcilable dispute and conflict.

■ There is no burden or duty on the part of the State to establish motive in a homicide prosecution. Rice v. State, 250 Ala. 638, 35 So.2d 617.

The inquiry, however, is material and very often becomes the basis of potent proof. Tyler v. State, 19 Ala.App. 380, 97 So. 573.

■ As tending to show motive, it is always relevant to prove the existence of ill will between the participants in the affray. Humber v. State, 19 Ala.App. 451, 99 So. 68.

■ In consonance with this doctrine and taking into account that the alleged unfriendly statement was made just a short time prior to the fatal difficulty, and considering also that the assertion had relation to a matter which, according to the contention of the State, was the motive for the assault, we hold that there was not error in the admission of this evidence. Parvin v. State, 248 Ala. 704; 26 So.2d 573; Allen v. State, 111 Ala. 80, 20 So. 490; Ex parte State, 181 Ala. 4, 61 So. 53; Carwile v. State, 148 Ala. 576, 39 So. 220; Kelsoe v. State, 47 Ala. 573; Morrison v. State, 84 Ala. 405, 4 So. 402; Enzor v. State, 24 Ala.App. 346, 135 So. 595; Lewis v. State, 231 Ala. 211, 164 So. 92.

■ The State sought to prove by the appellant on cross examination that he made certain statements to the automobile dealer from whom he had purchased the car to which reference has been made above. This inquiry related to appellant's remarks about the refusal of the deceased to sign the notes to secure the payments. Over objections the court allowed the witness to answer.

Assuming, but not deciding, that this could not show ill will or motive and it did exceed the right to free cross examination, we hold the answers to the questions were not harmful to the accused. He answered either that he did not remember or in the negative. Stephens v. State, 250 Ala. 123, 33 So.2d 245; Kornegay v. State, 33 Ala. App. 338, 33 So.2d 405.

■ When the cross examination of the appellant had concluded, his counsel made a motion "to exclude the testimony with reference to the automobile." This request was refused by the court.

The motion was stated in terms too general. Objections were not interposed to several of the questions concerning the automobile transaction. Southern R. Co. v. Hardin, 1 Ala.App. 277, 55 So. 270; Machen v. State, 16 Ala.App. 170, 76 So. 407.

■ The State further pressed the matter relating to conversation about the car and security notes by introducing the automobile dealer as a witness. Over objections the witness answered: "He (appellant) asked me why King did not sign the note and I told him Mr. King said he extended his credit as far as he thought or wanted to with him and he just didn't feel like signing the note for the car. He said, 'King was a liar, he did say he would sign the note.'"

This inquiry comes under the influence of the doctrine hereinabove discussed. It tended to show ill will. Authorities *supra*.

We come to consider the written instructions which were refused to the appellant.

■ In the early case of Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am.St. Rep. 844, the Supreme Court approved charge number 1 in the instant case. In Williams v. State, 140 Ala. 10, 37 So. 228, the Martin case, *supra,* was specifically overruled in this aspect, and the charge was condemned. We followed this latter holding in Diamond v. State, 22 Ala.App. 410, 116 So. 312.

■ Charge number 2 is abstract.

■ Charge 3 was disapproved by us in the following cases: Bringhurst v. State, 31 Ala.App. 608, 20 So.2d 885; Abercrombie v. State, 33 Ala.App. 581, 36 So.2d 111; Baggett v. State, 33 Ala.App. 591, 35 So.2d 576.

■ Number 4 is not based on the evidence. Edwards v. State, 205 Ala. 160, 87 So. 179; Garrett v. State, Ala.App., 44 So. 2d 260.

■ The State proved that the homicide was committed in DeKalb County. Charge 5 was, therefore, refused without error.

■ In the early case of Keith v. State, 97 Ala. 32, 11 So. 914, the Supreme Court approved charge 6. This view was not followed in these subsequent cases: Webb v. State, 100 Ala. 47, 14 So. 865; Goodwin v. State, 102 Ala. 87, 15 So. 571; Goldsmith v. State, 105 Ala. 8, 16 So. 933; Mann v. State, 134 Ala. 1, 32 So. 704; Gregory v. State, 148 Ala. 566, 42 So. 829; Wright v. State, 148 Ala. 596, 42 So. 745; Davis v. State, 214 Ala. 273, 107 So. 737; Howard v. State, 239 Ala. 274, 194 So. 857.

With the exception of the Davis case, supra, the Supreme Court criticized the charge because it omitted the element of retreat. In the instant case this duty was imposed on appellant.

This court has reviewed this same instruction in a number of cases. We will not laden this opinion by citing them.

■ So far as we are able to find, refused charge number 7 was first reviewed by the Supreme Court in Watts v. State, 177 Ala. 24, 59 So. 270. It was there approved. It again found favor in Davis v. State, 214 Ala. 273, 107 So. 737. In the case of Smith v. State, 230 Ala. 18, 158 So. 808, Justice Thomas, writing for the court, condemned the instruction because it omits the element of retreat. He overruled the Smith case on this point.

It appears the authorities support the view that if the question of retreat is not involved the charge should be given, otherwise it should be refused. We adhered to this theory in the case of Doswell v. State, 34 Ala.App. 546, 42 So.2d 480. See also, Bell v. State, 20 Ala.App. 425, 104 So. 443; Huff v. State, 23 Ala.App. 426, 126 So. 417.

■ Number 8 is the affirmative charge and is related to manslaughter in the first degree. Clearly, the appellant was not due this instruction.

We have responded to each presented question which merits our comment.

The case was tried with evident care and caution. Every legal right to which the accused was entitled was attentively safeguarded by the able trial judge.

Under the State's evidence the jury would have been authorized to impose a much more severe punishment.

Time heals many of the mistakes of mankind. The law is jealous, however, and demands accountability for its infractions and violations.

If our conclusions are sound, this is a case in which a man must pay the penalty of the law for an offense he committed when he had just reached his adulthood, a quarter of a century ago.

"Man's crimes are his worst enemies, following him like shadows, till they drive his steps into the pit he dug."

The judgment of the court below is ordered affirmed.

Affirmed.